JOHN M. JONES and HENRY G. SKINNER v. JOHN WILSON and
JOSIAH MIZELL.

*Contract—Consideration—Evidence, Irrelevant.*

1. The admission of testimony irrelevant to the issue is not sufficient
   ground for awarding a new trial, unless it appears the party
   objecting to its reception suffered, or might have suffered, preju-
   dice thereby.

2. When at a sale under a deed in trust executed to secure debts, it was
   agreed between the creditor and debtor that the former would bid
   for the property, and if it brought less than the debt he would
   accept it in satisfaction of the sums due him, and the debtor was
   thereby induced not to bid or procure others to do so. and the prop-
   erty was bid off by the creditor for a less sum than his debt:
   *Held,* That there was a sufficient consideration to support the agree-
   ment and the debtor was discharged from his obligation.

CIVIL ACTION, tried before *MacRae, J.,* at Fall Term, 1888,
of CHOWAN Superior Court.

On the 2d day of August, 1886, the plaintiffs on the one
part and the defendants on the other part, entered into a
written contract in which it was provided that the defend-
ants sold to plaintiffs " the Skinner's Point Fishery and the
lands attached belonging thereto, and bought of Caroline
M. Wood by Wilson A. Mizell, particularly described in her
deed; also all the fishing material used by Wilson and
Mizell on said fishery, including that bought of C. M. Wood,
and such as they may have added thereto, excepting the
crops growing on said lands; three coils of rope bought by
Wilson & Mizell of J. S. Johnson & Co ; the household and
kitchen furniture which they carried from Bertie County
since the purchase from Mrs. Wood ; the salt, the driers and
tubs and the kettles and tarring fixtures, at the price of
$6,100.    They further agree to execute deeds for the same,
Jones & Skinner to pay $1.250 cash, and to execute equal notes

for the balance, secured by mortgage on the same property, and payable June 1, 1887, 1888 and 1889, with interest from date." There were other stipulations not material to this controversy.

In pursuance of this contract, Wilson & Mizell conveyed the property, and Jones and Skinner made the cash payment and executed the notes for the balance of the purchase money and the deed in trust to secure them.

The plaintiffs alleged that, when they took possession of the fishery and premises connected therewith, a large portion of the fishing material which the defendants had contracted to sell to them was missing and never was supplied, although they had notified defendants of the shortage and demanded that it should be replaced, and brought this action to recover damages for such alleged breach of the contract.

The defendants denied that there was any breach of the contract on their part, and alleged that they had delivered all the property sold by them, except a small quantity of old rope, &c., of inconsiderable value, and by way of counterclaim demanded judgment for the balance on the purchase notes, after deducting certain credits arising from the sale of the property under the deed in trust.

To this, plaintiffs replied that they owed nothing on account of the said notes; that in October, 1887, the property which had been received by them from the defendants, and which was embraced in the deed in trust, was put up for sale to satisfy the balance due; that at the sale it was agreed between the parties that the defendants would accept the amount for which the property would sell in full payment and discharge of the entire indebtedness, and that acting upon the faith of this agreement the plaintiffs stood by and permitted the defendants to purchase the property at a much less amount than they could have bid for it; that regarding their indebtedness to be thus settled they de-

manded a surrender of their notes. This agreement, it was alleged, was long after the plaintiffs had given notice and made the demand on account of the failure to deliver the property for which this action was brought.

The defendants objected, as upon demurrer *ore tenus* to the reply to the counter-claim, upon the ground that the agreement therein alleged to have been made by them was without consideration. This objection was not sustained, and defendants excepted.

The following issues were submitted to the jury:

1. " Did the defendants fail to deliver to the plaintiffs any of the material which had been sold by defendants to plaintiffs?"

2. " What damages, if any, have plaintiffs sustained by reason of said failure to deliver?"

3. "Are the plaintiffs indebted to defendants, as charged in the counter-claim, if so, in what sum?"

Much testimony was offered on the first and second issues by each party; that for the plaintiffs tending to prove the failure to deliver the material used by defendants at the fishery, as described in the contract and deed, and the carrying away of a valuable portion of the same by defendants after the execution of the contract and deed; and that for defendants tending to prove that all of the material so conveyed was delivered, except a small portion of inconsiderable value, for which the defendants admitted their liability. Upon this question, the defendant Mizell testified that only a small quantity of rope, fit only for "junk," was carried off; that in the making of the contract between plaintiffs and defendants, he did the bargaining; that he told Mr. Skinner that defendants had put a good deal of new material in there, and that plaintiffs would have little to buy.

The plaintiff Skinner was recalled in reply, and testified: " That Mizell recommended the material highly ; he did not say what kind it was; he said it was in good order."

The defendants' counsel objected to this testimony being received on any other ground than as going to the credibility of defendant Mizell.

The Court admitted the testimony without specially instructing the jury that it was only to be considered as it affected the credibility of witness Mizell. Defendants excepted.

Upon the third issue, Mr. Jones, one of the plaintiffs, testified: "That he was present at the sale of the property under the deed of trust made by plaintiffs to Mr. Pruden to secure the defendants; Mizell and Pruden were talking; Mizell asked witness, 'how about the sale, who was going to do the bidding?' Witness said, 'I don't care about the bidding, we want it to bring what we owe you;' Mizell said, 'how much is it?' Mr. Pruden said, 'between $5,100 and $5,200, you had better run it up to $5,500;' Mizel said, 'I will do the bidding, I will run the property up to the amount of our claims, if it brings any more you will get the benefit of it;' witness did not bid; witness had an outside bidder, who would have bid $5,000, and witness would have run it up for him, but for what Mizell said.

"When Mizell asked witness how about the sale, and who would do the bidding, witness told him about the gentleman who would bid $5,000 for it; it was to wipe out all of the indebtedness of plaintiffs to defendants; plaintiffs had not then brought this suit; Mizell did not say anything about its settling plaintiffs' claim against defendants; Mizell bid $4,400 for the property."

Defendant Mizell testified: "That defendants were to bid in the fishery unless it went beyond the debt due to them, and they were to let Jones take it if they could sell the apparatus to Winslow, who wanted to buy it; witness bid in the property at $4,400, and left it with Mr. Pruden to arrange with Winslow, but Winslow declined to take it; the property consisted of the land and fishery and fishing

material; Jones wanted the land and fishery; there was no agreement that day with Jones; he told witness afterwards that Mr. Pruden had assured him that all the defendants wanted was their money, and Jones wanted to know if the notes had been cancelled; witness referred him to Mr. Pruden; don't recollect saying that if the property brought more than the debt he would have the benefit of it, and if not, that witness would take the property and cancel the debt."

Mr. Pruden testified for the defendants: "That the conversation between Jones and Mizell was in some respects like both stated it; both had conferred freely with witness before the sale; on the day of sale Jones said to witness, 'how about bidding?' Witness said, 'Mizell only wants the money, whatever bid he makes; if it is below your debt, he will re-sell the property, the land to Jones and the material to some one else, and the plaintiff shall have the benefit of any re-sale;' Jones said something about the Harding debt, and Harding said he and Jones would arrange that; Jones was to have the land at a certain price, probably $2,000, and the material to be sold to any one he could sell to, and Jones was to have the benefit of any re-sale; if there was no re-sale the notes were to be cancelled; there was a re-sale of property to Mr. Rea for $5,000, witness thinks; Jones made demand on witness for his notes after this suit was begun; he told witness about the shortage."

Mr. Jones, being examined for plaintiff, in reply, testified, among other things not bearing upon this issue, that he was authorized to bid only $5,000, and could not have bid anything for himself

There was no exception to the charge, except upon the 3d issue, which was as follows: "The defendants say that they are entitled to your verdict for the balance on the notes given by the plaintiffs for the fishery, &c., less the sum for which the property sold."

On the other hand, the plaintiffs say: "That defendants agreed that if they bought in the property for less than the debt they would cancel the notes."

"If this agreement was made, and if there was no consideration at all for it, it will amount to nothing; but if such a promise and agreement was made, in consideration that plaintiffs should not bid for themselves, or for any one else, at the sale, there was a consideration to support it."

To this portion of the charge defendants excepted.

The jury responded in favor of the plaintiffs, and there was judgment for them, from which defendants appealed.

*Mr. John Devereax* (*Mr. W. M. Bond* filed a brief) for plaintiffs.

No counsel for defendant.

SHEPHERD, J. We are unable to see how the defendants were prejudiced by the admission of the testimony of the witness Skinner, to the effect that the defendant Mizell had "recommended the material highly and had told witness that it was in good order." It appears to have been in reply to the testimony of Mizell "that (before the sale) he told Mr. Skinner that defendants had put a good deal of new material in there, and that plaintiffs would have little to buy." The issue was simply as to whether the defendants had delivered to the plaintiffs the property which they had purchased, and the testimony was entirely irrelevant. There was no exception to the charge, and we must assume that his Honor explained to the jury the proper meaning of the issue and called their attention to the testimony applicable thereto. There is nothing in the record which discloses that the defendants "suffered or might have suffered any prejudice" by the admission of the testimony. *Glover* v. *Flowers*, 101 N. C., 134; *Wagner* v. *Ball*, 195 N. C., 323. The second exception is therefore overruled.

The other exceptions involve the correctness of his Honor's charge upon the question of consideration. There was testimony tending to show that the plaintiffs refrained from bidding at the sale because of the promise of the defendants "that if they bought in the property for less than the debt they would cancel the notes" of the plaintiffs, which were secured by a deed in trust upon the property. There was also testimony tending to show that the plaintiffs had an "outside bidder" who would have bid at least five thousand dollars. The property sold for only forty-four hundred dollars, and now the defendants wish to recover by counter-claim the balance due upon the notes. The defendants in support of their contention rely upon the cases of *Mitchell* v. *Sawyer*, 71 N. C., 70; *McKenzie* v. *Culbreth*, 66 N. C., 534. They urge that the value agreed to be accepted is capable of being made certain, that this amount is less than the debt, and that there was therefore no consideration. They argue that this case does not fall within the third exception mentioned in *McKenzie* v. *Culbreth, supra*. That case decided "that an agreement by a creditor to receive a part in discharge of the whole of the debt due to him by bond is an agreement without consideration and therefore void."

The exception mentioned was, that "if something other than money, and really of less value than the debt, is agreed upon and received in satisfaction, the Court will not consider the value to be other than as the parties have agreed upon." No money was agreed upon here, but the alleged agreement was that if defendants bought in the property for less than the debt they would cancel the notes. The consideration of this promise was that the plaintiffs should not bid. This, it would seem, was "something other than money," and the parties having themselves fixed the value, this value so fixed, the Court says, in the cases mentioned, will not be considered. Apart from this, the law, as declared

in *McKenzie's* case and *Mitchell* v *Sawyer*, *supra*, has been abrogated by *The Code* § 574, which provides that the acceptance of a less amount than that which is due shall be a full and complete discharge. We therefore conclude that there is no error.

Affirmed.